## 10409

### WHITE, COUNTY SUPERVISOR, *ET AL.* v. SANDERS.

#### (103 S. E. 86.)

1. CONVICT—SUPERVISOR MAY SELECT CONVICT TO WORK ROADS WITHOUT CONSENT OF SUPERINTENDENT OF PENITENTIARY.—Under act February 25, 1914 (28 St. at Large, p. 626), allowing the county supervisor to select convicts desired to work roads, the supervisor is not bound to obtain the consent of the superintendent of the penitentiary to his selection.

2. PRISON—SUPERINTENDENT OF PENITENTIARY, REFUSING TO DELIVER CONVICT TO COUNTY SUPERVISOR, HAS BURDEN OF SHOWING UNCONDITIONAL DELIVERY TO PENITENTIARY.—Where a convict selected by the county supervisor to work the roads became ill and was sent to the penitentiary, and after recovery the superintendent of the penitentiary refused to return him to the supervisor of the county, though the penitentiary offered its facilities for treatment of convicts on county chain gangs, etc., who might become ill, on the ground that the custody of the convict was unconditionally delivered, the superintendent has the burden of establishing that contention, and on failure must redeliver the convict.

Before MOORE, J., Richland, Fall term, 1919. Reversed.

Petition by L. E. White, as Supervisor of Sumter County, and others, for writ of mandamus against A. K. Sanders, individually and as Superintendent of the South Carolina Penitentiary. After hearing on rule to show cause, the petition was dismissed, and petitioners appeal.

*Mr. L. D. Jennings,* for appellant, submits: *The power being conceded, the wisdom or policy of legislation is for the legislature alone:* 111 S. C. 205. *The word "may" found in Act No. 336, 28th Stats. at Large, p. 626, is permissive, and is used here to grant permission. The word "allow" in same act means permit, and it is just as if the legislature had said the supervisors were given permission to use the convicts in question:* 9 How. 247; 13 L. Ed. 125. *The conclusion of the Federal Supreme Court in Supervisors v. United States, 4 Wall. 435, 18 L. Ed. 419, is relevant here: "The conclusion to be adduced from the authorities is*

*that where power is given to public officers, in the language of the act before us, or in equivalent language—whenever the public interest or individual rights call for its exercise—the language used, although permissive in form, is in fact peremptory."* This use of the word *"may"* is recognized by our Courts: 10 S. C. 343; 5 L. R. A. (N. S.) 342.

*S. M. Wolfe, Attorney General,* and *Morris C. Lumpkin, Assistant Attorney General,* for respondent. *Mr. Lumpkin* submits: *The rule in this State is that affirmative words make the statute directory and negative or exclusive words make it imperative:* 9 Rich. Eq. 521; 33 S. C. 580. *The general rule as to the construction of the word "may" is that it will be usually considered as being permissive only:* 107 Mass. 194. *The true rule is that in the construction of a statute the word "may" is only to be considered mandatory for the purpose of sustaining or enforcing a right, but never for creating one:* 39 Mo. 521; 78 Conn. 30; 60a, 1010.

May 13, 1920.

The opinion of the Court was delivered by MR. CHIEF JUSTICE GARY.

The following statement of the facts appears in the argument of the appellants' attorney, and is adopted by the respondent's attorneys:

"Harry Bowman was convicted of administering poison on the 12th day of October, 1917, and was sentenced to serve a term of four years upon the chain gang or be confined for a like period in the State penitentiary. Bowman commenced serving his sentence upon the chain gang. After eight or ten months he became ill, or feigned illness, and upon the direction of the supervisor of Sumter county he was sent to the State penitentiary. By March, 1919, he had recovered and was able to work, and informed the supervisor of Sumter county of that fact, whereupon the supervisor requested the superintendent of the penitentiary to return Bowman to him.

"Mr. Sanders, the superintendent of the penitentiary, refused this request, and there ensued the correspondence set out in the case; the matter finally being submitted to the Attorney General, who advised Mr. Sanders that he had no right to retain the custody of Bowman. Mr. Sanders still refusing to deliver Bowman to the proper authorities from Sumter county, upon a petition setting out the foregoing facts, his Honor, Judge Ernest Moore, issued a rule to show cause, directed to Mr. Sanders, why Bowman should not be returned to Sumter county.

"Mr. Sanders made return to the rule, setting out only two facts not included in the petition. The first of these was that Bowman was not sent to the penitentiary for treatment, but his custody was surrendered unconditionally to the penitentiary authorities. The second alleged fact was that, if the superintendent of the penitentiary were required to return convicts in cases similar to this, it would cause him great inconvenience and render it impossible for him to carry on the State farm.

"The allegations of the return were traversed, especially so much thereof as alleged Bowman was not sent there for treatment. After hearing argument, Judge Moore passed an order, set out in the case, dismissing the petition."

The appeal involves the construction of the act of 1914 (28 St. at Large, 626), which contains the following provisions: "Section 1. That from and after the passage of this act the county supervisor from each county in the State may be allowed to use any of the convicts he may select, sentenced from his county to the State penitentiary, without charge, for the purpose of working the roads of his county, and for such other purposes as he may deem proper.

"Sec. 2. That said convicts shall be under the absolute custody and control of the supervisor and whatever guards he may appoint."

In construing the act, his Honor, the Circuit Judge, uses this language:

"It will be observed that the language of the statute is permissive, and not mandatory: 'That from and after the passage of this act the county supervisor from each county in the State may be allowed to use any of the convicts he may select.' Even a liberal construction of this language will not give such supervisor an absolute right. The mandatory language used in legislation generally does not appear herein. If, then, he is to be allowed to select these convicts, from whom shall he obtain the permission? Who shall allow him to select, except that person who has the legal custody of such prisoners—the superintendent of the South Carolina penitentiary? * * * Suffice it to say that I find the language of the statute permissive in its character, and that the person to grant this permission is the superintendent of the South Carolina penitentiary, the incumbent being A. K. Sanders, the respondent herein, and, until some alteration in the law has been made by the General Assembly, the superintendent of the State penitentiary has the right to comply with the requirements of the various supervisors for prisoners from time to time as he may deem for the best interests of the penitentiary; and it is so ordered."

Our construction of the act is different from that placed upon it by his Honor, the Circuit Judge. His interpretation requires the interpolation of words requiring the supervisor of a county to obtain the permission of the superintendent of the penitentiary, when the plain meaning of the act is that the supervisor should be allowed the use of any of the convicts sentenced from his county to the State penitentiary he may select, without the consent of the superintendent, provided the selection is made before the penitentiary authorities acquire possession of the convicts. In this case the selection was made by the supervisor before Bowman was delivered to the penitentiary authorities.

The respondent in his return relies upon the fact that Bowman was not sent to the penitentiary for medical treatment, but that his custody was surrendered unconditionally to the superintendent of the penitentiary. The following statement appears in the respondent's return:

"That said penitentiary offers at all times its facilities for the treatment of convicts and prisoners on the various county chain gangs that may be sick or temporarily diseased. That a special provision is made for the safe-keeping and treatment of such prisoners upon application of the several county authorities, and such prisoners when cured are returned to the said counties, but in the case of the said prisoner, Harry Bowman, no such request was made before the prisoner was delivered to the State pententiary for the serving of his sentence."

It was incumbent upon the respondent to prove that the supervisor waived his right to the use of the convict, when he was delivered to the penitentiary, as the supervisor had already selected him for the use of his county. This the superintendent failed to do. Two affidavits were introduced in evidence by petitioners and none by the respondent, which show conclusively that the convict was delivered to the superintendent for medical treatment only.

Reversed.